**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| LAWRENCEBURG POWER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-00232-TWP-DML |
| | ) | |
| LAWRENCEBURG MUNICIPAL UTILITIES, | ) | |
| and CITY OF LAWRENCEBURG, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS, MOTION TO STAY**
**AND MOTION FOR LEAVE TO FILE SURREPLY**

This matter is before the Court on a Motion to Dismiss Complaint filed pursuant to Federal

Rule of Civil Procedure 12(b)(6) by Defendants Lawrenceburg Municipal Utilities ("LMU") and

the City of Lawrenceburg ("City") (collectively, "Defendants") (Filing No. 31), and Defendants'

Motion to Stay (Filing No. 33). Also before the Court, is a Motion for Leave to File Surreply in

Opposition to Defendants' Motion to Dismiss and Motion to Stay (Filing No. 48), filed by Plaintiff

Lawrenceburg Power, LLC ("Plaintiff"). This case surrounds a dispute over the provision of utility

services in Lawrenceburg, Indiana. Plaintiff initiated this action, requesting declaratory and

injunctive relief to avoid irreparable harm that would result from the termination of water and

sewer services at its Lawrenceburg facilities. For the following reasons, the Defendants' Motion

to Dismiss is **granted**, the Motion to Stay is **denied as moot**, and Plaintiff's Motion for Leave to

File Surreply is **denied**.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a

motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all

inferences in favor of Plaintiff as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Plaintiff Lawrenceburg Power is a Delaware limited liability company with its principal office in Princeton, New Jersey. It is authorized to do business in Indiana as a foreign limited liability company. Plaintiff owns and operates a natural gas-fired electric generating facility located in Lawrenceburg, Indiana (the "Plant"). It operates the Plant to sell electric energy, capacity, and other services in the federally-regulated wholesale electric power market (Filing No. 1 at 1, 5).

The City is a third-class city within the meaning of Indiana Code § 36-4-1-1, and it is located in Dearborn County, Indiana. The City is authorized to define its corporate limits and boundaries, and it owns and operates LMU, a municipal utility company. LMU provides retail electric, water, and waste water services on an unbundled basis for the Defendants' community within its service territory. LMU has withdrawn from the Indiana Utility Regulatory Commission's jurisdiction respecting its electric utility services rates (Filing No. 1 at 5). As a result, LMU's provision of water and sewer services within its service territory is not subject to the rate jurisdiction of the Indiana Utility Regulatory Commission.

The federally-regulated wholesale electric power market for the Mid-Atlantic region, including relevant parts of Indiana, is managed by PJM Interconnection, LLC ("PJM"). To deliver the electricity it generates to the grid, Plaintiff is directly interconnected to the high-voltage transmission system owned by Indiana & Michigan Power Company ("Indiana & Michigan Power"), a subsidiary of the American Electric Power Corporation ("AEP") and an affiliate of the Plant's prior owner, AEP Generating Company ("AEP GenCo"). Indiana & Michigan Power's transmission lines and related facilities are part of a larger, regional high-voltage interstate

transmission system, which is controlled and operated by PJM. Both the wholesale electric power market and the interstate transmission system, including the market managed by PJM, are comprehensively regulated by the Federal Energy Regulatory Commission ("FERC") pursuant to the Federal Power Act, 16 U.S.C. § 791a *et seq.* ("FPA") (Filing No. 1 at 1–2).

The Plant requires electricity to operate certain equipment located on-site such as its controls, computers, lighting, heating, and air conditioning. These electrical requirements are commonly referred to as "station power". When the Plant is generating electricity, it uses some of the power it generates to directly satisfy its station power requirements. During the infrequent hours when the Plant is not generating electricity, the Plant obtains electricity from its direct interconnection to the FERC-regulated high-voltage interstate transmission system to satisfy its station power requirements. *Id.* at 2.

Plaintiff receives lower-voltage retail service from LMU for some of its facilities at the same location as the Plant, but those other facilities are not used in the generation of electricity at the Plant. The Plant itself does not have any electrical interconnection to the electric distribution system owned and operated by LMU. Thus, LMU does not and cannot directly supply the Plant itself with any electricity required for station power. *Id.* at 2.

Under the terms of a mutual settlement agreement to resolve a lawsuit among LMU, the City, and AEP GenCo (Plaintiff's predecessor in interest and the prior owner of the Plant), AEP GenCo voluntarily entered into an agreement for electric service on December 23, 2015, with LMU and the City. This agreement for electric service was entered into just months before AEP GenCo began the process of selling the Plant.[1] Under the agreement, LMU agreed to furnish the

---

[1] On February 13, 2017, PJM filed an interconnection service agreement with FERC. This agreement was among PJM, Plaintiff, and Indiana & Michigan Power. On April 7, 2017, FERC accepted the interconnection service agreement, effective on the closing date of the transaction in which Plaintiff acquired the Plant from its prior owner, AEP GenCo. The transaction closed on January 30, 2017, the effective date of the interconnection service agreement. The

Plant with some form of deemed electric power plant service (although LMU is not electrically interconnected with the Plant), and AEP GenCo agreed to make payments to LMU. Furthermore, the agreement allowed Plaintiff to unilaterally terminate the agreement on the first day of the calendar year with a one-year notice. Plaintiff exercised that right on December 21, 2017, and provided timely notice to LMU for the termination of the agreement effective January 1, 2019. After providing the notice of termination, Plaintiff continued to pay the amounts owing to LMU under the terms of the agreement and intended to do so during the remaining term of the agreement (Filing No. 1 at 2–3).

After the termination of the agreement, Plaintiff intended to self-supply all of its station power requirements, including during those limited time periods when the Plant is not generating, under the provisions of the federally-approved Open Access Transmission Tariff that governs PJM's operation of the wholesale market and the regional transmission system ("PJM Tariff"). The PJM Tariff comprehensively regulates the wholesale market and transmission system and is approved by FERC pursuant to the FPA. Under the federally-approved PJM Tariff, a generator participating in the wholesale market may elect to "self-supply" station power during "negative" intervals—those time periods when the generator is not generating—provided the generator has generated more electricity during a calendar month than it obtains from the high-voltage interstate transmission system. Thus, under the PJM Tariff, a generator can "net" its station power requirements against its cumulative generation across a calendar month, provided it has "banked" enough electricity during that month. This self-supply option is available to any generator that participates in PJM's wholesale market. Alternatively, a generator may elect to have its station power requirements served by a third-party under a contract, such as what AEP GenCo did when

_____

interconnection service agreement gave the Plant the right to provide up to 1,140.30 megawatts of capacity and energy to the PJM-controlled high-voltage interstate transmission system (Filing No. 1 at 6–7).

4

it entered into the agreement with LMU. A generator may change its election between these options by giving notice to PJM. *Id.* at 3.

After receiving the written notice that Plaintiff was exercising its right to terminate the agreement, LMU responded that it might terminate the provision of water and sewer services to the Plant, which services are a necessary and integral part of the Plant's operations. LMU has been providing the necessary water and sewer services to Plaintiff. LMU advised Plaintiff that it would undertake a cost-of-service study as part of an effort by the City and LMU to adopt a new rate ordinance that would impose increased rates on Plaintiff. LMU and the City advised that they may also take other action in an attempt to subject Plaintiff to the terms of the agreement or a subsequent rate ordinance passed by the City and implemented by LMU. *Id.* at 4.

If the City and LMU terminate the water and sewer services to Plaintiff, Plaintiff would effectively have to cease operations. The Plant would be rendered unworkable because of a lack of water and sewer services, and Plaintiff would be unable to sell electricity in the PJM wholesale market. Plaintiff asserts that any such action by the City and LMU would serve to impermissibly frustrate Plaintiff's rights under the FPA to participate in the wholesale markets operated by PJM and Plaintiff's right to self-supply its station power requirements under the FERC-approved PJM Tariff. Plaintiff asserts that it would suffer irreparable harm, and the wholesale electricity market administered by PJM also would be harmed because the Plant's generated electricity would not be available to be sold in the market. *Id.* at 4.

In response to the City's and LMU's threat to terminate water and sewer services, Plaintiff filed this lawsuit on December 13, 2018, asserting a single claim for equitable relief to prevent LMU and the City from taking such actions in contravention of federal law by attempting to force Plaintiff to remain subject to the terms of the agreement or a new rate ordinance or forcing Plaintiff

to become an electric customer of LMU in order to continue receiving water and sewer services. *Id.* at 4–5.

## II.  <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633; *Cozzi Iron & Metal*, 250 F.3d at 574 (similar standard for dismissal of a counterclaim). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

When considering a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

### III.  DISCUSSION

Before the Court are Defendants' Motion to Dismiss and Motion to Stay discovery pending resolution of the Motion to Dismiss and the Plaintiff's Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss and Motion to Stay.  The Court will first address Plaintiff's Motion for Leave to File Surreply and then turn to the Motion to Dismiss.  In light of the Court's ruling on the Motion to Dismiss, Defendants' Motion to Stay discovery pending resolution of the Motion to Dismiss is **denied as moot**.

### A.  Plaintiff's Motion for Leave to File Surreply

Plaintiff requests leave to file a surreply in opposition to the Defendants' Motion to Dismiss and Motion to Stay for "the limited purpose of addressing an argument that LMU and the City presented for the first time in their reply brief in support of their motion to dismiss and motion to stay." (Filing No. 48 at 1.)  According to the Plaintiff, "Defendants' reply repeatedly cites an administrative order, *Midwest Independent Transmission System Operator, Inc.*, 139 FERC ¶ 61,113 (2012) ('*MISO*'), that was not presented in their motion to dismiss to support an entirely new argument." *Id.* Plaintiff asserts that this entirely new argument is that FERC "affirmatively disclaimed jurisdiction over any and all sales of station power nationwide, including under the

PJM Interconnection, L.L.C. ('PJM') tariff." *Id.* at 2. Plaintiff asks for leave to file a surreply to address *MISO* and the new argument.

In response, Defendants point out that Plaintiff advanced the argument (in its response brief opposing the Motion to Dismiss) that FERC's *Duke Energy* orders affected only station power in California, a single-state wholesale electric market, and those orders had no effect on the station power provisions in the PJM Tariff. In the reply brief, Defendants cited FERC's decision in *MISO* to assert that FERC rejected Plaintiff's argument and held that its disclaimer of jurisdiction over the provision of station power in the *Duke Energy* orders applied regardless of the identity of the transmission provider and was not limited to California. Defendants argues that they were entitled to reply to Plaintiff's response brief and directly address the Plaintiff's arguments, including citing to additional authority. "That is the purpose of a reply brief," and "[b]ecause Defendants' reply raises no new arguments, Plaintiff has no grounds to file a surreply." ([Filing No. 49 at 2](#).)

The "purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 U.S. Dist. LEXIS 29463, at *4 (S.D. Ind. Mar. 25, 2010). "New arguments and evidence may not be raised for the first time in a reply brief. Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." *Reis v. Robbins*, 2015 U.S. Dist. LEXIS 23207, at *5 (S.D. Ind. Feb. 26, 2015) (citations omitted). Courts allow a surreply brief only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response. *See Miller v. Polaris Labs., LLC*, 2014 U.S. Dist. LEXIS 18161, at *4–5 (S.D. Ind. Feb. 12, 2014).

In light of the limited purpose of a surreply brief and the limited circumstance under which they are permitted, the Court **denies** Plaintiff's Motion for Leave to File Surreply. A review of the parties' opening, response, and reply briefs indicates that Defendants' citation to and reliance on *MISO* was an appropriate reply to Plaintiff's response brief. Defendants did not object to evidence in Plaintiff's response brief, and Defendants did not raise new arguments or evidence in the reply brief, which are the two grounds upon which a surreply is permitted. In this case, Defendants simply replied to Plaintiff's response argument and supplied additional authority to support the permissible and proper reply argument.

The Court notes that it resolves the Motion to Dismiss on the issue of a lack of a private cause of action and does not address the parties' second argument concerning whether Plaintiff's claim fails as a matter of law to state a claim upon which relief can be granted. The substance of Plaintiff's surreply brief addresses the second argument and thus is not necessary for resolving the Motion to Dismiss.

## B.   <u>Defendants' Motion to Dismiss</u>

Plaintiff's claim for equitable relief under the FPA is based on the federal preemption and filed-rate doctrines arising out of the United States Constitution's Supremacy Clause. In the Complaint, Plaintiff asserts that it brings this action to "prevent the City or LMU from passing any ordinance or undertaking any related action in response to Lawrenceburg Power exercising its right to terminate the Contract in an attempt to require Lawrenceburg Power to be an electric customer." (Filing No. 1 at 20.) In requesting equitable relief, Plaintiff alleges that it will "suffer irreparable injury, loss and damage for which it has no timely, adequate remedy at law for LMU's threated termination of its water and sewer service and other potential legislative action by the City that would be preempted by the FPA and barred by the filed rate doctrine." *Id.*

In their Motion to Dismiss, Defendants challenge Plaintiff's sole claim for equitable relief asserting the FPA and the Supremacy Clause do not create a private right of action for which Plaintiff can bring a lawsuit and invoke this Court's jurisdiction. Defendants explain that "the Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (U.S. 2015) (internal citations and quotation marks omitted). Thus, to raise a preemption claim, a plaintiff must either point to an express or implied private right of action under the allegedly preemptive federal statute or show that the federal court can act pursuant to its equitable power to enjoin the alleged unlawful action. Defendants asserts that there is no private right of action under the FPA,[2] and thus, the issue in this case is whether the Court's equitable power can be invoked under the FPA, which is dependent upon "whether Congress expressly or implicitly 'inten[ded] to foreclose equitable relief' to private parties under the statute." ([Filing No. 32 at 13](#) (quoting *Armstrong*, 135 S. Ct. at 1385).)

Defendants point out that the only two federal courts[3] to consider the question of whether Congress expressly or implicitly intended to foreclose equitable relief under the FPA have determined that a private right of action for equitable relief is not available under the FPA. Relying on factors established in *Armstrong*, they assert the FPA forecloses private actions for equitable relief because the FPA's "express provision of one method of enforcing a substantive rule suggests

---

[2] The United States Supreme Court has held the FPA provides no private right of action because the FPA sets "standard[s] for [FERC] to apply and, independently of Commission action, creates no right which courts may enforce." *Mont.-Dakota Utils., Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951).

[3] *See Coalition for Competitive Elec. v. Zibelman*, 272 F. Supp. 3d 554 (S.D.N.Y. 2017); *Village of Old Mill Creek v. Star*, 2017 U.S. Dist. LEXIS 109368 (N.D. Ill. July 14, 2017). Lawrenceburg also points out this *Armstrong* issue was first raised in connection with an FPA preemption claim by the Supreme Court in *Hughes v. Talen Energy Marketing*, where the court in a footnote assumed without actually deciding the issue that plaintiffs alleging FPA violations could seek relief in federal court. *Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288, 1296 n.6 (U.S. 2016).

that Congress intended to preclude others," and the issues raised in this case are "judicially unadministrable." *Armstrong*, 135 S. Ct. at 1385.

Relying on *Seminole Tribe v. Florida*, 517 U.S. 44, 73–74 (1996), Defendants argue that the presence of an express statutory enforcement scheme can, by itself, demonstrate Congress's intent to preclude the exercise of a federal court's equitable jurisdiction. "The FPA tacitly forecloses private parties from invoking equity jurisdiction to challenge state laws enacted in alleged violation of the FPA because Congress implicitly provided a 'sole remedy' in the FPA— specifically, enforcement by FERC." *Zibelman*, 272 F. Supp. 3d at 565. Defendants assert that the FPA contains a comprehensive administrative enforcement scheme that provides FERC with broad enforcement powers.

The FPA's comprehensive administrative enforcement scheme states as follows:

> All rates for sales or transmission subject to FERC's jurisdiction are to be filed with FERC. 16 U.S.C. § 824d(c). FERC may suspend and examine new or changed rates to ensure they are just and reasonable and not unduly preferential or discriminatory. *Id.* §§ 824d(d), (e). Interested parties can intervene and oppose utility rate filings. 18 C.F.R. § 385.214. Any person may file a complaint seeking changes to any existing "rate [or] charge . . . collected by any public utility for any . . . sale subject to [FERC] jurisdiction," or to "any rule, regulation, practice, or contract affecting such rate [or] charge," that the complainant believes to be "unjust, unreasonable, unduly discriminatory or preferential." 16 U.S.C. § 824e(a). Further, "[a]ny person" may file a complaint regarding "anything done or omitted to be done by any [regulated entity] in contravention of" the statute (16 U.S.C. § 825e), or may file a petition asking FERC to issue a declaratory order. 18 C.F.R. § 385.207. FERC also can declare state laws preempted. *Orangeburg v. FERC*, 862 F.3d 1071, 1081 (D.C. Cir. 2017). It has ruled on FPA preemption claims brought to its attention. *E.g., Cal. Pub. Utils. Comm'n*, 132 FERC ¶ 61,047, *granting clarification and dismissing reh'g*, 133 FERC ¶ 61,059 (2010), *reh'g denied*, 134 FERC ¶ 61,044 (2011).

> FERC also has ample tools to remedy violations. FERC may "perform any and all acts" it finds "necessary or appropriate to carry out" the FPA's provisions. 16 U.S.C. § 825h. And, the FPA specifically empowers FERC—"in its discretion"—to bring an action in federal district court against "any person" to enforce compliance with the FPA and enjoin any acts that violate it or obtain a writ of mandamus compelling compliance. *Id.* § 825m(b). Congress afforded these

explicit rights to FERC, committed exercise of them to FERC's discretion, said nothing about suits by private plaintiffs, and instead provided for such entities to seek relief from and through the agency. *Armstrong*, 135 S. Ct. at 1389 (Breyer, J., concurring).

(Filing No. 32 at 17–18.)

Defendants argue that, if Congress wanted private parties to be able to bring judicial actions for equitable relief under the FPA, it could have created such a cause of action. However, Congress did not create such a private cause of action when it enacted the FPA. Instead, Congress later modified the FPA to create a narrow private cause of action under the Public Utility Regulatory Policies Act ("PURPA") (which is not applicable to this case),[4] thereby showing that, under the FPA, "Congress otherwise 'chose to eliminate general equitable relief for private parties.'" *Zibelman*, 272 F. Supp. 3d at 566–67." (Filing No. 32 at 18.) "[T]he FPA precludes private enforcement except as provided for by PURPA, and private parties such as Plaintiffs 'cannot, by invoking the Court's equitable powers, circumvent Congress's exclusion of private enforcement.'" *Zibelman*, 272 F. Supp. 3d at 565 (quoting *Armstrong*, 135 S. Ct. at 1385).

Concerning the second *Armstrong* factor—whether the issues are "judicially unadministrable"—Defendants argue the issues presented in Plaintiff's claim fall under the expertise and purview of FERC and are thus judicially unadministrable. FERC, not this Court, should consider whether Plaintiff's station power use is a retail sale or wholesale sale as well as other related questions such as self-supply netting, whether a generator is net negative or positive, and whether FERC itself can even enforce the PJM Tariff provisions. Defendants argue these

---

[4] In describing PURPA, Lawrenceburg asserts, "Congress created a private right of action in a single, circumscribed section of the FPA not relevant here. The Public Utility Regulatory Policies Act ('PURPA'), which amended the FPA to include provisions relating to cogeneration and small renewable power projects, provides an express cause of action to challenge certain state conduct regarding those facilities. 16 U.S.C. § 824a-3(h)(2)(B)." (Filing No. 32 at 15.)

issues are judicially unadministrable further supporting its position that Congress intended to preclude the exercise of a federal court's equitable jurisdiction for FPA claims.

Defendants conclude that this action must be dismissed because Plaintiff has no cause of action: there is no private right of action under the FPA, and the Court's equitable power cannot be invoked under the FPA because Congress intended to foreclose equitable relief to private parties under the FPA by its "sole remedy" in the comprehensive administrative enforcement scheme and the judicial unadministrability of the issues.

By not responding to or addressing Defendants argument and case law that the FPA does not provide an express or implied private right of action, Plaintiff concedes that there is no express or implied private right of action under the FPA.[5] Instead, Plaintiff relies on the argument that the Court can act pursuant to its equitable power to enjoin Defendants' conduct as a violation of the FPA. Plaintiff asserts that its "claim falls squarely within this Court's equity jurisdiction." (Filing No. 46 at 7.) Plaintiff argues, under the federal question statute, that federal courts undoubtedly have jurisdiction to entertain suits requesting "declaratory and injunctive relief from state action that violates federal law by virtue of preemption under the Supremacy Clause." *Id.*

Plaintiff argues that its invocation of the Court's equity jurisdiction is proper because Defendants' actions and threats are directly aimed at subjecting Plaintiff to local regulations, which it asserts is an important distinction from the *Zibelman* and *Village of Old Mill Creek* cases upon which Defendants rely. Plaintiff points out that, in *Zibelman* and *Village of Old Mill Creek*, the challengers were not subject to the contested state regulatory program, but in this case, Plaintiff is

---

[5] *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.); *Myers v. Thoman*, 2010 U.S. Dist. LEXIS 107502, at *11 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made . . . concedes those points."); *Cintora v. Downey*, 2010 U.S. Dist. LEXIS 19763, at *12 (C.D. Ill. Mar. 4, 2010) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession.").

directly targeted by Defendants' preempted conduct and regulations. Thus, as the target of a local regulation, Plaintiff has a unique interest in enforcing the FPA because of the direct economic harm posed by Defendants' actions.

Plaintiff relies on *Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, where the Second Circuit reached the merits of whether a preemption challenge to a local law based on the federal Airport Noise and Capacity Act of 1990 could proceed under the federal court's equity jurisdiction. In that case, the Second Circuit held the district court had equity jurisdiction to grant relief because the challengers filed suit "not to enforce the federal law themselves, but to preclude a municipal entity from subjecting them to local laws enacted in violation of federal requirements." 841 F.3d 133, 146 (2nd Cir. 2016). Plaintiff argues the "Second Circuit's holding based on this distinction accords with the long-standing purpose of equity jurisdiction to provide relief to parties 'threatened with escalating fines and other sanctions' that file suit 'preemptively to assert a defense that would be available to it in a state or local enforcement action.'" (Filing No. 46 at 9 (quoting *East Hampton*, 841 F.3d at 144–45).) Plaintiff argues this is the same type of equitable relief that it seeks in this case.

Regarding the two factors from *Armstrong* that preclude private enforcement of a federal statute under a federal court's equitable power, Plaintiff asserts that neither factor applies to preclude its action here. *Armstrong* provided a narrow holding where the Medicaid Act provided a "sole remedy" for violation of the statute, which remedy would be administered by the Secretary of Health and Human Services. Additionally, the Medicaid Act provisions in question were broad, vague, and complex, making them subject to a "judgment-laden standard" and judicially unadministrable. *See Armstrong*, 135 S. Ct. at 1385. Plaintiff asserts the Supreme Court relied on the presence of both factors to conclude the statute limited the federal court's equity jurisdiction,

and finding that only one of the factors is present should not be enough to limit the court's equity jurisdiction.

In this case, Plaintiff asserts the FPA does not provide a "sole remedy" administered by FERC; rather, the FPA provides that the district court "shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of this chapter or any rule, regulation, or order thereunder." 16 U.S.C. § 825p. The FPA preserves the court's equity jurisdiction as well as provides potential remedies from FERC; thus, Plaintiff argues, there is more than one "sole remedy" under the FPA.

Plaintiff disagrees with Defendants' characterization of PURPA as a signal that Congress intended to foreclose private actions in equity under the remainder of the FPA. Plaintiff argues that, while PURPA amended the FPA, it is effectively a standalone statute addressing energy conservation and the development of small renewable energy and cogeneration facilities. Whatever Congress intended by creating an express private right of action for only certain matters covered by PURPA, PURPA cannot be read to say anything about the availability of an equitable cause of action concerning the different, distinct matters covered by the FPA.

Plaintiff further asserts that the FPA statute itself recognizes that it can give rise to or otherwise not foreclose a private cause of action. Section 824v states, "Nothing in this section shall be construed to create a private right of action." 16 U.S.C. § 824v(b). Plaintiff argues this provision would be unnecessary if the FPA (or PURPA) could be read as already precluding such actions. Because Section 824v is part of the FPA, not part of PURPA, it suggests that if Congress wanted to preclude private rights of action under other sections of the FPA, Congress would have adopted similar provisions within the FPA, not through PURPA.

Plaintiff asks the Court to recognize and declare that the Plaintiff can self-supply station power under the federally-approved PJM Tariff through the FERC-jurisdictional wholesale power market and over the interstate transmission system. The PJM Tariff is clear on its face about the availability of self-supply and how it works, and thus, application of a "judgment-laden standard" is not required to determine that Defendants' attempt to charge Plaintiff for what it can self-supply conflicts with the PJM Tariff. Therefore, Plaintiff asserts, it is not asking the Court to determine whether Defendants' actions violate a vague statutory standard, as was the case in *Armstrong*, so the issues here are not judicially unadministrable.

Furthermore, Plaintiff argues that if the Court deems it necessary to consider the question of whether Defendants' actions violate the FPA's requirement that rates and practices are "just and reasonable," this issue also is not judicially unadministrable. Other federal courts have considered and ruled upon this issue, *see Zibelman*, 272 F. Supp. 3d at 565–66, and Plaintiff asserts "this jurisprudence is the natural consequence of Congress's decision in the FPA to confer jurisdiction upon both federal district and appellate courts to hear actions arising under the statute." (Filing No. 46 at 15.)

Plaintiff concludes that "neither of the *Armstrong* factors are present in this case. And even if this Court were to conclude that one of the factors is present, *Armstrong* indicates that *both* factors are required to foreclose the availability of equitable relief." *Id.* Therefore, Plaintiff argues, its claim is properly before the Court.

In reply, Defendants asserts that Plaintiff's argument conflates the two distinct issues of the Court's jurisdiction and the Plaintiff's private right of action. Defendants explain,

> [T]he issue here is not the scope of the Court's jurisdiction—the question is whether Plaintiff has authority to invoke that jurisdiction. Plaintiff needs to demonstrate that it has a cause of action . . . . *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979)

(unlike jurisdiction, cause of action addresses whether plaintiff is a proper party to invoke the Court's power).

([Filing No. 47 at 7](#).)  Thus, Defendants argue, Plaintiff's reliance on 16 U.S.C. § 825p is unavailing because that section of the FPA addresses the Court's jurisdiction; it does not provide a private cause of action to Plaintiff.  Section 825p provides a district court with jurisdiction over all FPA enforcement "suits in equity and actions at law," but that speaks to the court's power, not who can invoke it.  *See Mont.-Dakota Utils.*, 341 U.S. at 249 (provisions "vesting jurisdiction in the District Courts[] do[] not create causes of action, but only confer[] jurisdiction to adjudicate those arising from other sources").  This section gives district courts jurisdiction over suits that FERC is authorized to bring.

Defendants further reply that Plaintiff's argument (that it is directly affected by Defendants' actions) and Plaintiff's reliance on *East Hampton* do not fix Plaintiff's cause of action problem.  Defendants notes that while the Second Circuit in *East Hampton* determined the plaintiffs were the direct target of a local ordinance and their preemption claim fell within the court's federal equity jurisdiction, the court also recognized that a "federal court's equity power to enjoin unlawful state or local action may, nevertheless, be limited by statute." *East Hampton*, 841 F.3d at 145.  The FPA does just that in limiting the court's equity power.  And Defendants further argue that the Supreme Court made clear in *Armstrong* that "statute-specific analysis is the touchstone to determining whether a plaintiff has an equitable cause of action.  135 S. Ct. at 1385, 1388.  [*East Hampton*] involved the Airport Noise and Capacity Act of 1990, a statute—and a statutory scheme—that is very different from the FPA." ([Filing No. 47 at 8](#) n. 9.)

Defendants reassert that the only two courts that have addressed the question of whether the FPA implicitly precludes a private right of action have determined that it does preclude such claims.

"The FPA tacitly *forecloses private parties* from invoking equity jurisdiction to challenge state laws enacted in alleged violation of the FPA because Congress implicitly provided a 'sole remedy' in the FPA—specifically enforcement by FERC." *Zibelman*, 272 F. Supp. [3]d at 565 (emphasis added). *Star*, 2017 WL 3008289, at *9 (FPA forecloses equitable action for reasons of judicial unadministrability). Regardless of whether Plaintiff is subject to the local regulation at issue, it "cannot, by invoking [judicial] equitable powers, circumvent Congress's exclusion of private enforcement." *Armstrong*, 135 S. Ct. at 1385.

(Filing No. 47 at 8.)

Defendants assert that, contrary to Plaintiff's argument, *Armstrong* does not establish a rigid test and require the presence of both factors to preclude equitable claims. *See Armstrong*, 135 S. Ct. at 1385, 1388 (Breyer, J., concurring) (the statute-specific analysis does not call for the "application of a simple, fixed legal formula"). The first factor alone—the existence of a comprehensive remedial scheme—can demonstrate Congress's intent to foreclose private equitable suits. *See Seminole Tribe*, 517 U.S. at 73–74. Furthermore, "[t]here is no indication in *Armstrong* that both factors must be satisfied in order to conclude that Congress intended to foreclose equitable relief to private parties." *Zibelman*, 272 F. Supp. 3d at 566.

Replying to Plaintiff's argument concerning Section 824v(b), Defendants explain that Congress amended the FPA in 2005 and enacted 16 U.S.C. § 824v to prohibit energy market manipulation. Subsection (b) of that new section provides that "[n]othing in this section shall be construed to create a private right of action." 16 U.S.C. § 824v(b). Defendants argue that Plaintiff is incorrect in its assertion that the restriction in Section 824v(b) would be unnecessary if the FPA as a whole already precluded private rights of action. Defendants assert Section 824v(b) does not apply to the FPA as a whole; rather, it is limited to the new section concerning energy market manipulation. Defendants further explain,

[The] language [in] (§ 824v(a)) "closely track[s] the prohibited conduct language in section 10(b) of the Securities Exchange Act of 1934." Congress knew that the courts had construed the language of section 10(b) to create an implied private right

of action and it enacted § 824v(b) to ensure that adding counterpart language to the FPA would not do so. Properly understood, § 824v(b) further evinces Congress's intent to route FPA enforcement actions through FERC, and not through private party actions before the district courts.

([Filing No. 47 at 11](#) (internal footnotes with citations omitted).)

Defendants reiterate that PURPA is part of the FPA, contrary to Plaintiff's assertion that it is "effectively a standalone statute," and PURPA provided a specific, narrow private cause of action. In doing so, "[t]he limited private right of action provided by PURPA is by itself sufficient to establish that Congress intended to foreclose equitable relief." *Zibelman*, 272 F. Supp. 3d at 566.

The Court begins by noting that the FPA and the Supremacy Clause do not create a private right of action. "The Supremacy Clause . . . certainly does not create a cause of action." *Armstrong*, 135 S. Ct. at 1383. The FPA "is a standard for [FERC] to apply and, independently of [FERC] action, creates no right which courts may enforce." *Mont.-Dakota Utils.*, 341 U.S. at 251. As noted above, Plaintiff has conceded this point.

Turning to the question of whether the Court may exercise equitable power to address the FPA preemption claim brought as a private cause of action, the Court agrees with the two other federal district courts in the Northern District of Illinois and the Southern District of New York that have confronted this question. Plaintiff cannot bring a private cause of action for an FPA preemption claim.

The Court concurs with the Southern District of New York, which explained that there "is no indication in *Armstrong* that both factors must be satisfied in order to conclude that Congress intended to foreclose equitable relief to private parties." *Zibelman*, 272 F. Supp. 3d at 566. This determination accords with the Supreme Court's decision in *Seminole Tribe* regarding a comprehensive administrative enforcement scheme and the preclusion of a private right of action.

In fact, the court in *Zibelman* determined that the second *Armstrong* factor was not present but still concluded that Congress intended to foreclose equitable relief to private parties under the FPA. *Id.*

The first *Armstrong* factor strongly applies to the FPA, indicating that Congress intended to foreclose equitable relief to private parties. Plaintiff's Complaint cites the Fifth Circuit case of *AEP Tex. N. Co. v. Tex. Indus. Energy Consumers*, 473 F.3d 581 (5th Cir. 2006). In that case, the Fifth Circuit held, "FERC, not the state, is the appropriate arbiter of any disputes involving a tariff's interpretation." *Id.* at 585. "Congress has given FERC exclusive jurisdiction to determine whether wholesale rates are just and reasonable." *Id.* "[I]t is within FERC's jurisdiction, not the states', to make a final determination as to whether the tariff has been violated." *Id.* "[T]he FPA gives FERC exclusive jurisdiction to remedy tariff violations by providing refunds." *Id.* at 586. The Fifth Circuit further held, "If a state disputes a utility's interpretation of a tariff, FERC is the proper forum for resolving the disagreement." *Id.* Furthermore, "the 'only appropriate forum' for determining the reasonableness of filed rates and agreements 'is before the Commission or a court *reviewing the Commission's order.*" *Id.* at 586 n.21 (emphasis added) (quoting *Miss. Power & Light Co. v. Mississippi*, 487 U.S. 354, 375 (1988)). If FERC discovers a person is engaged in acts or practices that violate the FPA, FERC is expressly authorized to bring an action in federal court to enjoin such acts or practices. 16 U.S.C. § 825m(a). Similar to the courts' conclusions in *Zibelman* and *Village of Old Mill Creek*, the Court concludes that the FPA's comprehensive enforcement and remedial scheme indicates Congress's intention to preclude equitable relief to private parties in federal court.

Congress's allowance for a private right of action in the very narrow and specific circumstances under PURPA within the FPA further supports the conclusion that a general private right of action under the FPA was not intended to be provided by Congress. Defendants' argument

is well-taken that the language in subsection 824v(b) precluding a private right of action does not imply that Congress was allowing a private right of action under all other sections of the FPA. Rather, Congress appears to have included subsection 824v(b) to make clear that the new Section 824v(a) was not creating a private right of action even though the similar language in section 10(b) of the Securities Exchange Act of 1934 had been judicially-determined to create a private right of action.

Plaintiff has argued that the issues in this case, and particularly the issue of "just and reasonable rates," are not judicially unadministrable as evidenced by federal courts' resolution of the issues in other cases listed in *Zibelman*, 272 F. Supp. 3d at 565–66. However, the cases listed in *Zibelman* do not support Plaintiff's position that a private right of action exists. Each of those cases were before federal appellate courts, not federal district courts, and more importantly, each of those cases involved the court's review of FERC's decisions, not a private entity's original action. After listing those appellate cases that reviewed FERC's decisions, the court in *Zibelman* acknowledged, "[i]ndeed, by *allowing FERC to file federal lawsuits*, 16 U.S.C. § 825m(a), Congress necessarily anticipated that courts might have to oversee the enforcement of the just and reasonable rate standard, albeit with deference to FERC." 272 F. Supp. 3d at 566 (emphasis added).

Finally, the Court determines that Plaintiff's reliance on 16 U.S.C. § 825p to support its assertion for a private right of action is unavailing. The Court concludes, as did the court in the Northern District of Illinois, that "Section 825p of the Federal Power Act gives district courts jurisdiction over suits that FERC is authorized to bring under § 825m(a), but such vesting jurisdiction in the district courts does not create a *private* cause of action." *Vill. of Old Mill Creek*, 2017 U.S. Dist. LEXIS 109368, at *24 (emphasis in original).

To summarize, the Court concludes that the FPA and the Supremacy Clause do not create a private right of action, and Congress intended to foreclose equitable relief to private parties under the FPA, thereby prohibiting the Court from invoking its equitable power to consider Plaintiff's alleged claim.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Complaint (Filing No. 31) and **DENIES as moot** their Motion to Stay (Filing No. 33).  Plaintiff's Motion for Leave to File Surreply (Filing No. 48) is **DENIED**.  Final judgment will issue under separate order.

**SO ORDERED.**

Date:  9/30/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brookasany Barrowes
KIRKLAND & ELLIS LLP
brooksany.barrowes@kirkland.com

Emil Barth
BAKER BOTTS LLP
emil.barth@bakerbotts.com

Jeffery A Earl
BOSE MCKINNEY & EVANS, LLP
jearl@boselaw.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP
amcneil@boselaw.com

J. Christopher Janak
BOSE MCKINNEY & EVANS, LLP
jjanak@boselaw.com

Nicholas Kevin Kile
BARNES & THORNBURG, LLP
nkile@btlaw.com

Cynthia S. Bogorad
SPIEGEL & MCDIARMID LLP
cynthia.bogorad@spiegelmcd.com

Gregory A. Neibarger
BINGHAM GREENEBAUM DOLL LLP
gneibarger@bgdlegal.com

Peter J. Hopkins
SPIEGEL & MCDIARMID LLP
peter.hopkins@spiegelmcd.com